**Frank PETREKOVICH, Administrator of the Estate of Thomas Richtoric, Appellant,**

**v.**

**The PENNSYLVANIA RAILROAD COMPANY, a corporation, Appellee.**

**No. 7156.**

United States Court of Appeals
Fourth Circuit.

Argued April 19, 1956.

Decided May 19, 1956.

---

Charles D. Bell, Wellsburg, W. Va. (J. P. McMullen, Jr., Wellsburg, W. Va., on brief), for appellant.

Russell B. Goodwin, Wheeling, W. Va. (C. Lee Spillers and Charles P. Mead, Wheeling, W. Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

## PARKER, Chief Judge.

This is an appeal from a judgment for defendant on a directed verdict in an action for wrongful death against a railroad company. Decedent was killed as a result of being struck by a train while walking on a trestle. The trial judge directed a verdict on the ground that the evidence showed that decedent was guilty of negligence in going upon the trestle. The question presented by the appeal is whether, notwithstanding such negligence on the part of decedent, there was evidence upon which the jury could have found liability on the part of defendant in proper application of the last clear chance doctrine as recognized in the law of West Virginia. We think that there was.

The evidence showed that decedent, an elderly man, had been drinking with a companion near the end of the trestle and had been warned that he was in danger as the time was near for the passing of the train. Notwithstanding this warning, he did not remove himself from danger, but, on the contrary, began walking across the trestle, which was 109 feet long. While he was on it and walking towards the south end, a freight train approached from the north at a speed of from 15 to 20 miles an hour. There was testimony that decedent could have been seen when the engine was more than 600 feet distant, that the engineer actually saw him on the trestle more than 309 feet away and immediately began blowing the whistle and that decedent then went stumbling towards the south end of the trestle. There was evidence that the train, with only 24 of its 57 cars loaded, could have been stopped within a distance of less than 225 feet if the emergency brakes had been promptly applied, but that there was a delay of twenty or thirty seconds in applying them, that they were not applied until the train was entering upon the trestle, which was 304 feet from where the engine was when decedent was first seen by the engineer, and that the train did not stop until the engine was more than 200 feet beyond the trestle. The engineer testified that he knew that decedent was in a dangerous situation and that he applied the emergency brakes immediately; but the jury was not required to accept his testimony and could have believed from the other testimony that there was unnecessary

delay in applying the brakes and that, if they had been applied promptly, this might have stopped the train or have slowed it down sufficiently to have enabled decedent to get off the trestle and into a place of safety. There was evidence that decedent might have stood on the steel girders of the trestle and thus avoided being struck, but there was other evidence to the effect that this was not feasible.

On these facts, we think that the case was clearly one for the jury. The law is thus clearly stated by the Supreme Court of Appeals of West Virginia in Smith v. Gould 110 W.Va. 579, 159 S.E. 53, 55, 92 A.L.R. 28, 31:

"It is not to be understood, however, that the salutary, sensible and practical doctrine of contributory negligence stands as adamant, immovable, unalterable and relentless. It is not a rule of iron. It carries with it an exception or qualification which is as well grounded in American and English jurisprudence as is the rule itself. In fact the qualification not only proves the rule but vitalizes and humanizes it. This is known in the law as the doctrine of last clear chance. It has many variations, and much confusion has been evidenced in the extended and manifold discussions of the same. The base of the rule is this: A plaintiff who has negligently placed himself or his property in a situation of imminent peril and is either unconscious of the situation, or unable to avoid the danger, or both, may nevertheless recover damages of the defendant who negligently inflicts injury, if the defendant could have avoided the injury after discovering the plaintiff's peril."

A West Virginia case very much in point involving a trespasser on a trestle is Stokey v. Norfolk & Western Ry. Co., 132 W.Va. 77, 55 S.E.2d 102, 104, wherein the Supreme Court of Appeals laid down the law here applicable in the fourth paragraph of the court's syllabus as follows:

"In an action for wrongful death, resulting from decedent's being struck and killed, while walking on and over the defendant railway company's bridge, though decedent may have been negligent in the first instance in going on the bridge, decedent's personal representative may, nevertheless, recover, where it appears from the record that decedent while on the bridge was in a position of peril from which, by the exercise of reasonable care, she could not escape being struck by defendant railway company's approaching train; and that defendant railway company's employees, charged with the operation of the train, actually saw decedent in her position of peril and realized her peril, and therafter could, by the exercise of reasonable care, either have stopped the train before it struck decedent, or slackened its speed so that decedent would have had time to reach a place of safety."

The railroad argues that decedent was a mere trespasser and that the railroad owed him no higher duty then not to wantonly and wilfully injure him. The same argument was made in the Stokey case and the court pointed out that failure to use ordinary care to stop the train, or slacken its speed, when decedent was seen or should have been seen to be in a position of peril, amounted to wanton and wilful negligence. The court said:

"In Hall v. Monongahela West Penn Public Service Co., 128 W.Va. 547, pt. 1 syl., 37 S.E.2d 471, a case in which the decedent Hall was struck and killed on defendant railway company's bridge, this Court held: ' "One not in the employ of a railway company, using its tracks as a walk way over a portion thereof which pedestrians are accustomed to use for such purpose, but not at a public crossing, is at most a mere licensee, and such railway company

owes to him no higher or other duty than it owes to a trespasser." Pt. 1 syl., *Blagg Adm'r v. Baltimore & Ohio Railroad Company*, 83 W.Va. 449, 98 S.E. 526. Such duty is no higher than not wantonly or wilfully to injure such pedestrian.' The Hall case was followed by the recent case of *Payne v. Virginian Railway Company* [131 W.Va. 767], 51 S.E.2d 514. If, as we have indicated, the defendant Neal, as the lead coach rounded the curve to a position where Mrs. Stokey was necessarily in sight, made, as the Donnellys testified, no effort to stop the train or slacken its speed, he and his employer, the defendant railway company, under the doctrine of respondeat superior were guilty of wanton and wilful negligence, and, if after actual discovery of decedent in her evident position of peril, the defendant railway company, through its head brakeman, failed to use reasonable care to avert injury to plaintiff's decedent, and such failure resulted in her death, the defendants are guilty of actionable negligence. Section 479 Restatement of the Law of Torts; 'Last Clear Chance—Some Further Observations', by Robert T. Donley, a member of the Monongalia County Bar, 49 W.Va.L.Q. 51."

In the case of *Wendell v. Payne*, 89 W. Va. 356, 109 S.E. 734, which involved injury to a deaf person while walking on a railroad track, the West Virginia court used the following language, which was quoted by Judge Soper speaking for this court in *Chesapeake & O. R. Co. v. Craft*, 4 Cir., 162 F.2d 67, 70:

" ' * * * While it was gross negligence of this plaintiff to walk upon a railroad track where trains were likely to pass, and especially so because he had been cautioned not to use them, yet it was still the duty of the servants of the company to use the ordinary care. His great carelessness will not excuse theirs, if they failed to exercise reasonable care after discovering him. His

carelessness or infirmity does not change the rule of ordinary care on the part of the company, now well settled in this state.' "

The law laid down by these decisions is in accord with the law generally prevailing in other jurisdictions, which is thus well stated in 44 Am.Jur. p. 708:

"Sec. 472. *Persons in Position of Inescapable Peril.*—It is the duty of a railroad company to use reasonable care to avoid injuring a person, even though a trespasser, who is caught in some situation from which it is physically impossible to escape in time to avoid injury, as, for example, upon a bridge or trestle, or where the person has caught his foot in the rails so that he is unable to extricate himself. Thus, it has been held that if the engineer on an approaching train sees a person on a railroad bridge or trestle, whose only means of escape is to reach the end of the bridge, he must give such person ample time to cross in safety, and if the engineer speculates upon the chances of the latter's reaching the end of the trestle before the train does, until it is too late to stop the train, and he is run over and killed, the railroad corporation is answerable in damages, because it is recklessness for engineers to speculate upon such chances."

See also *Inland & Seaboard Coasting Co. v. Tolson*, 139 U.S. 551, 558, 11 S. Ct. 653, 35 L.Ed. 270; *Grand Trunk Ry. Co. v. Ives*, 144 U.S. 408, 429, 12 S.Ct. 679, 36 L.Ed. 485; *Chunn v. City & Suburban Ry.*, 207 U.S. 302, 309, 28 S. Ct. 63, 52 L.Ed. 219; *Snead v. N. Y. Cent. R.*, 4 Cir., 216 F.2d 169; *Chesapeake & O. R. Co. v. Hawkins*, 4 Cir., 187 F. 568; note 55 L.R.A. 419; note 69 L. R.A. 526, 556; note 14 L.R.A.,N.S., 888; note Ann.Cas.1914D, 1218; note 92 A. L.R. 47.

■■ We are not impressed by the argument that verdict should have been directed for defendant on the theory

that decedent had the last clear chance of avoiding his injury in that he might have stood on the steel girders of the trestle or might have jumped therefrom into the creek below. These were matters for the consideration of the jury along with the other facts in the case. Of course, if decedent failed to exercise ordinary care to extricate himself from his dangerous position when it became apparent to him, this would bar recovery, Reidel v. Wheeling Traction Co., 63 W. Va. 522, 61 S.E. 821, 16 L.R.A.,N.S., 1123; note 92 A.L.R. at pages 100–101, 128; but under the circumstances disclosed by the evidence here the question was clearly one for the jury. Grand Trunk Ry. Co. v. Ives, supra.

For the reasons stated the judgment appealed from will be reversed and the case will be remanded for a new trial.

Reversed.